DOMENGEAUX, Judge.
Plaintiff, Daisy Oliphant, was employed by the Natchitoches Parish School Board (School Board) as a cook at Natchitoches Central High School. During the course of her employment on September 14,1977, she was removing from an oven a large tray upon which lay “French curlers” (pastries) to be later served as breakfast to students of Natchitoches Central High School where Daisy worked. As she walked to a counter holding the tray approximately chest high, her right foot became “tangled up two times” in what was later identified as a milk dolly. This dolly was the property of Michels Foremost Distributors and was being used to transport crates of milk from the delivery truck to the cafeteria’s refrigeration unit.
After plaintiff’s feet became entangled in the dolly, she stumbled to the floor injuring herself. She sued her employer, the School Board, for workmen’s compensation benefits and was awarded benefits of $82.07 per week for each weekly period from June 1, 1978, continuing through the period of disability, not to exceed a total of 450 weeks. Thereafter, plaintiff sued State Farm Fire & Casualty Insurance Company (State Farm),[1] Michels Foremost Distributors’ liability insurer, for damages allegedly caused by Michels’ employee in negligently obstructing plaintiff’s path with the dolly. The School Board intervened in her tort suit, seeking reimbursement from State Farm for all medical expenses and benefits “past and future” paid (or to be paid) by the School Board to her as a result of the dolly incident.
Prior to trial on the main demand, and with the trial court’s approval, plaintiff settled her claim against State Farm for an undisclosed amount and the main demand was dismissed with prejudice. Trial was then held on the School Board’s incidental demand.
*985 The trial court found that the milk employee placed the dolly in the pathway to the oven while plaintiff was unloading the French curlers from the oven; that the milk employee had a duty to warn persons working in the same area of his presence and the location of the dolly; that this duty was breached because plaintiff was unaware of the location of the dolly when she turned from the oven with the tray and stumbled over the dolly.
The Court implicitly found that plaintiff was free of contributory negligence by believing her testimony that the dolly had been moved into her path between the time that she went to the oven and the time that she tripped.
Judgment was awarded to the School Board and against State Farm and Charles Michels d/b/a Michels Foremost Distributors for $4,185.06 (for compensation benefits paid from June 1, 1978, through May 31, 1979), $682.43 in medical bills paid by the School Board, and $82.07 a week from May 31, 1979, continuing through plaintiff’s period of disability, not to exceed 450 weeks total.
From this adverse judgment State Farm has appealed. After reviewing the evidence, we reverse the trial court’s finding that the milk employee was negligent. Alternatively, and assuming that the milk employee was negligent, then we reverse the trial court’s implicit finding that plaintiff was free of contributory negligence. The trial court’s findings with respect to negligence are contrary to the law and the evidence presented in this case, and as such are manifestly erroneous.
Three persons testified at trial: Plaintiff, Lee Arthur White, a janitor at the school, and Alfred Randall Williams, the milk deliverer. The quality of the recorded testimony was so poor, however, that transcription was impossible. In place of the testimony, the record contains an “agreed narrative of facts” signed by each party’s attorney. This narrative contains a summary of the three witnesses’ testimony.
Of plaintiff’s testimony the narrative reads:
“She testified that on September 14, 1977, she was preparing to serve breakfast and had all the breakfast set up on the counter except for the French curlers which were in the oven. The milk man had his dolly present and was loading milk into the refrigerator. She went over to the oven, got her pads, took the baking sheet out of the oven and started back to the counter when she got her foot ‘tangled up two times’. Afterwards, she found out that she had tripped over the milk dolly and she didn’t remember seeing anything in the way on her way to the oven to get the French curlers. She said that when she passed, the milk dolly had two crates of milk on it and it was up next to the refrigerator and when she came back the dolly was further out in her way and she didn’t notice it. She repeated that nothing was in her way when she went to the stove and someone must have moved the milk dolly while she was taking the curlers out. She said that she did not see White move the dolly and she didn’t see the milk man move it and that she did not move it. She said that when she took the French curlers out of the oven, she held the tray approximately chest high and that she caught her foot in something and tried to ‘clear it’ two times, and on the second time she fell.”
In contrast to plaintiff’s testimony is the sworn testimony of the milk employee. According to the narrative:
“He testified that he did not see the plaintiff fall, that his milk dolly was placed at the same place that he usually stopped it when he delivered milk and that he had his back to the dolly and was moving milk in the refrigerator, getting ready to load the ‘new’ milk. He testified that he had two crates of milk sitting on the milk dolly at the time that plaintiff fell and that he helped her get up. He testified that his normal procedure was to go in in the morning to find out how much milk the plaintiff needed and then to go out to the truck and load the milk on the milk dolly and bring it in. He stopped the dolly immediately in front *986 of the refrigerator because he had to work down on his knees and move the milk that was remaining to one side of the refrigerator and then put the fresh milk, both white and chocolate in the refrigerator. He was in the process of moving the milk with his back to the milk dolly which was immediately beside him next to the refrigerator door, when Daisy fell. He testified that there was ample room for the plaintiff to walk between the dolly and the other equipment in the kitchen. He further stated he ‘thought she fell on the dolly’.”
The testimony of the janitor serves neither to corroborate nor refute the testimony of the other two witnesses. However, he did testify that he did not see the dolly nor did he see anyone else move it.
The trial court found a conflict in the testimony “as to just when the employee of State Farm’s insured placed the dolly before the refrigerator and in the pathway to the oven.” The Court resolved the conflict in favor of plaintiff, but not because the milk employee’s testimony lacked credibility:
“The [milk] employee states the dolly was placed before Daisy approached the oven. This same employee also states he did not see Daisy until she fell and he was attracted by the noise. He further stated he ‘thought she fell on the dolly.’ A careful study of these statements by the employee leads this Court to the conclusion that the employee does not know where Daisy was when he placed the dolly in the above mentioned pathway. This Court finds it was this employee’s duty to warn the persons working in the same area of his presence and the location of the dolly. This duty was breached by the employee.”
Our review of the above-quoted portions of the narrative discloses no such conflict. The milk employee’s ignorance of plaintiff’s whereabouts when the dolly was placed before the refrigerator is unimportant. He testified that when he brought the dolly into the cafeteria he placed it immediately in front of the refrigerator, as he normally did, and proceeded to move the milk already in the refrigerator to one side. When plaintiff fell, the dolly with two crates of milk still upon it, was immediately besides the milk employee next to the refrigerator door, just where he had put it initially. The employee further testified that plaintiff had ample room to walk between the dolly and the other equipment in the kitchen.
When Daisy walked to the oven, she noticed the milk dolly, with two crates aboard, up next to the refrigerator (which is precisely where the milk employee testified he placed it). When she returned with the tray she “didn’t notice” the dolly when she tripped over it but still maintained that it was further away from the refrigerator and more in her pathway. She speculated that “someone must have moved the milk dolly” but did not see anyone move it. Apart from plaintiff’s conjecture, there is no evidence that the milk dolly was moved by anyone after it was placed next to the refrigerator door.
Contrary to the opinion of the trial court, we find that the milkman owed no duty to plaintiff to inform her of his presence or the location of his dolly. The milkman delivered milk to the cafeteria daily. His presence was no surprise to her. On the date in question, plaintiff admitted knowing of his presence and she clearly saw the milk dolly, which stands about four feet high. She knew the dolly was customarily used to transport the milk from the truck to the cafeteria.
Only if the dolly constituted an unreasonably dangerous condition on the premises would the duty to warn arise. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976). Under this set of facts, the milk employee was under no duty to warn, since plaintiff saw the location of the dolly when she went to the oven, and there was no evidence, apart from plaintiff’s conjecture, to show that the location of the dolly had changed.
Assuming, however, that the milk employee was negligent in moving the milk dolly further away from the refrigerator *987 and into plaintiff’s path, plaintiff (and subsequently the School Board), would be precluded from recovering from State Farm because she was contributorily negligent in not exercising reasonable care to notice a condition (i. e. the location of the dolly in her pathway) which should have been observed by her and which was as obvious to her as it was to the milk employee. Shelton, supra. The trial judge fortifies this conclusion by noting in his reasons for judgment that Daisy could have seen the top handle of the dolly as she .turned from the oven with the tray of pastries. Her failure to notice even the top handle of the dolly demonstrates her lack of reasonable care. The fact that the wheels of the dolly would not be in her vision is of no moment because she was aware that the dolly was in the immediate vicinity and if she had exercised reasonable care in seeing the top handle of the dolly then she would certainly have known that the wheels of the dolly were directly beneath the handle.
Since Michels Foremost Distributors is not liable for the accident which injured Daisy, we will not consider appellant’s arguments that the amount of the award was excessive.
For the above and foregoing reasons the judgment of the District Court in favor of the Natchitoches Parish School Board and against State Farm Fire & Casualty Insurance Company and Charles Michels, d/b/a Michels Foremost Distributors, is reversed, and the School Board’s incidental demand is dismissed.
All costs are assessed against the Natchi-toches Parish School Board.

REVERSED AND RENDERED.

. The party sued originally was inaccurately identified as State Farm Mutual Automobile Insurance Company.